**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**DAVID FERRELL**
**ADC #105996** **PLAINTIFF**

**V.** **CASE NO. 5:09CV00377 BSM/BD**

**LARRY NORRIS, *et al.*** **DEFENDANTS**

## RECOMMENDED DISPOSITION

### I. Procedure for Filing Objections:

The following recommended disposition has been sent to United States District Court Judge Brian S. Miller. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the Recommended Disposition. A copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## II. **Background**:

Plaintiff, an inmate at the Cummins Unit of the Arkansas Department of Correction ("ADC"), filed this action pro se under 42 U.S.C. § 1983. (Docket entry #2) In his Complaint, Plaintiff alleges that Defendants acted with deliberate indifference to his medical needs. Specifically, Plaintiff claims that Defendants denied him hepatitis C treatment and surgery to repair a right inguinal hernia. Plaintiff names as Defendants various ADC officials as well as multiple employees of Correctional Medical Services ("CMS").

ADC Defendants Larry Norris, Wendy Kelley, and John Byus have filed a motion for summary judgment. (#106) CMS Defendants Dr. Arlene Moskovich, Marie Austin, Dr. Nnamdi Ifediora, Charlotte Green, Dr. Em Ward, and Rita Odom also have submitted a motion for summary judgment. (#109) Plaintiff has responded to both motions. (#115)

Based upon the evidence presented, the Court recommends that both motions for summary judgment (#106 and #109) be GRANTED.

## III. **Discussion**:

### A. Summary Judgment Standard

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246 (1986). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the

pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley v. City of Northwoods*, 415 F.3d 908, 910-11 (8th Cir. 2005) ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))). If the opposing party fails to carry that burden or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted. See *Celotex* 477 U.S. at 322.

B. ADC Defendants' Motion for Summary Judgment

In their motion for summary judgment, the ADC Defendants argue that they are entitled to judgment as a matter of law because: (1) Plaintiff failed to exhaust his claims against them; (2) Plaintiff failed to establish that they acted with deliberate indifference to his medical needs; and (3) they are entitled to qualified immunity. The Court agrees that Plaintiff has failed to exhaust his administrative remedies against the ADC Defendants. Thus, the Court will not address the other arguments raised by the ADC Defendants in their motion. See *Davis v. Harmon,* Case No. 10-1863, 2010 WL 3259378, (8th Cir. Aug. 19, 2010) (unpublished opinion) (holding that the trial court erred when it dismissed the case, with prejudice, on the merits without first considering the exhaustion issue, and dismissing without prejudice) and *Barbee v. CMS,* Case No. 10-1891, 2010 WL 3292789 (8th Cir. Aug. 23, 2010) (unpublished opinion).

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust their administrative remedies before filing a lawsuit challenging prison conditions. "No action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 738, 121 S.Ct. 1819 (2001) (holding that available remedies "must be exhausted before a complaint under § 1983 may be entertained").

Congress enacted the PLRA to "reduce the quantity and improve the quality of prisoner suits." *Porter v. Nussle*, 534 U.S. 516, 424, 122 S.Ct. 983 (2002). The purpose of the exhaustion requirement includes "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S.199, 127 S.Ct. 910, 923 (2007); see also *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2385 (2006).

In *Jones*, the Supreme Court clarified that "the level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 127 S.Ct. at 923.

In order to exhaust administrative remedies in accordance with the ADC's Inmate Grievance Procedure, an inmate must submit a grievance specifically identifying the

personnel involved.[1] (#108-1 at p.4, #108-2 at p.5) Medical grievances must be fully appealed to the ADC's Deputy Director for Health and Correctional Programs. (#108-1 at pp.8-9, #108-2 at pp.11-12)

Here, the evidence shows that Plaintiff fully exhausted ten medical grievances, MX-08-1784, MX-08-1785, MX-08-1828, MX-08-2006, MX-09-1469, MX-09-1470, CU-09-0955, CU-09-953, CU-09-954 and CU-09-990, during the time relevant to this case. (#108 at p.1) Plaintiff does not make any complaints about Defendants Norris, Byus, or Kelley in any of these grievances.[2]

Further, in his deposition, Plaintiff admitted that he did not file any grievances naming John Byus, Larry Norris, or Wendy Kelley.[3] (#108–15 at pp.5, 6, and 8)

Plaintiff has failed to come forward with any evidence to show either that he did fully exhaust his administrative remedies regarding his claims against the ADC

---

[1] The Inmate Grievance Procedure that was in effect at the times relevant to this lawsuit was contained in two ADC Administrative Directives, AD -07-03 (effective August 6, 2007 through January 29, 2009), and AD09-01 (effective January 30, 2009 to present). (#108-1 and #108-2)

[2] In grievance MX-08-1785, Plaintiff states that the consistent denial of medical care violates the contractual arrangement between the ADC and CMS, signed by Defendants Norris and Byus. (#108-6 at p.1) Plaintiff, however, fails to state how either Defendant Norris or Byus failed to provide him any medical treatment. Accordingly, although these Defendants are referenced in this grievances, Plaintiff did not exhaust his claim that these Defendants were aware of his medical needs and failed to provide Plaintiff the medical treatment necessary.

[3] Although Plaintiff acknowledges that Defendant Kelley responded to grievances, he admits that he did not file any grievances against her. (#108-15 at p.6) Plaintiff fails to state that he was prohibited from filing grievances against her.

Defendants or that he was prohibited from filing any such grievances. Although in his response to the motions for summary judgment, Plaintiff claims that he fully exhausted his grievances, he has not provided any evidence of exhaustion. Plaintiff simply explains that he wrote these Defendants letters requesting help. (#115 at p.1) Because Plaintiff has failed to create a genuine dispute of material fact on this issue, the ADC Defendants are entitled to judgment as a matter of a law.

C. CMS Defendants' Motion for Summary Judgment

In their motion for summary judgment, the CMS Defendants argue that Plaintiff has failed to establish that they acted with deliberate indifference to his medical needs as a matter of law.

On June 30, 2008, Plaintiff tested positive for Hepatitis C (HCV). (#111-1 at p.6) Following Plaintiff's diagnosis, he began being regularly seen in the ADC Chronic Care Clinic. Plaintiff first was seen in the Chronic Care Clinic on August 15, 2008. (#111-1 at p.7) During Plaintiff's second examination on October 30, 2008, Defendant Odom noted that Plaintiff's liver enzymes were slightly higher than they had been in June. (#111-1 at p.13) Defendant Odom also remarked that Plaintiff complained of joint aches and recommended that Plaintiff continue taking his medicine and that a follow-up appointment be scheduled in three months. (#111-1 at p.13)

On December 18, 2008, Plaintiff was seen during sick call requesting additional HCV treatment. (#111-1 at p.14) Specifically, Plaintiff requested that he be placed on

robaxin and on vaccine for Hepatitis A and B. (#111-1 at p.14) Plaintiff also requested that he bee seen by a doctor. (#111-1 at p.14)

On January 6, 2009, Defendant Ifediora examined Plaintiff. (#111-1 at p.15) Plaintiff complained that he had not been seen in the Chronic Care Clinic for HCV treatment. (#111-1 at p.14) Defendant Ifediora ordered various lab tests for Plaintiff, including a Hepatitis ABC Panel. (#111-1 at p.15) At that time, Defendant Ifediora noted that Plaintiff's HCV infection was "stable" and that he had been timely seen in the Chronic Care Clinic. (#111-1 at p.19)

On January 23, 2009, Defendant Ifediora saw Plaintiff again because of pain in Plaintiff's right wrist. (#111-1 at p.20) Plaintiff also complained that his prostate medicine was "not enough" and that he had not been given either the HAV or HBC vaccines. (#111-1 at p.20)

On January 28, 2009, Plaintiff underwent additional testing for Hepatitis A and B. (#111-1 at p.22) Based upon Plaintiff's test results, Plaintiff was scheduled for a pre-liver biopsy. (#111-1 at p.23) Plaintiff's medical records indicate that, at that time, he was immune to HAV and HBV and did not need any additional vaccinations. (#111-1 at p.24)

On March 5, 2009, Plaintiff was again examined by Defendant Ifediora. Defendant Ifediora indicated that there was no need for ribavirin therapy at that time. (#111-1 at p.25) Additional lab tests were ordered on that date. (#111-1 at p.25)

On April 13, 2009, Plaintiff was seen by Defendant Ifediora due to his complaints about lower abdominal pain. (#111-1 at p.26) Additional lab tests were ordered again at that time. (#111-1 at p.26)

On April 23, 2009, Plaintiff was seen by Defendant Ifediora in the Chronic Care Clinic for an HCV evaulation. (#111-1 at p.28)

On May 8, 2009, Plaintiff was seen by Defendant Ifediora to discuss a liver biopsy. (#111-1 at p.31)

On June 16, 2009, Plaintiff was seen by Dr. Rectenwald. (#111-1 at p.33) At that time, Dr. Rectenwald informed Plaintiff that he previously had been denied a liver biopsy because the request forms were not properly completed. (#111-1 at p.33) Dr. Rectenwald noted that he would resubmit the request for a livery biopsy. (#111-1 at p.33)

On July 7, 2009, Plaintiff underwent a liver biopsy. (#111-1 at p.35)

On July 30, 2009, Plaintiff was seen during sick call by Defendant Ward. (#111-1 at p.36) Plaintiff requested that he be provided the results of his liver biopsy and complained of pain in his right testicle. (#111-1 at p.36) Defendant Ward requested Plaintiff's biopsy results and prescribed Plaintiff a hernia belt. (#111-1 at p.36)

On August 10, 2009, Plaintiff was seen by Defendant Moskovich in the Chronic Care Clinic for an HCV evaulation. (#111-1 at pp.37-38)

On August 21, 2009, additional lab testing was done. (#111-1 at p.39) On September 2, 2009, Plaintiff met with Defendant Moskovich to discuss Plaintiff's test results. (#111-1 at p.40) Defendant Moskovich informed Plaintiff that his liver enzymes

had decreased since the previous test and that Plaintiff would be seen for a follow-up visit when his biopsy results were received. (#111-1 at p.40)

Plaintiff's biopsy results revealed "minimal chronic hepatitis" and Plaintiff was "negative for fibrosis." (#111-1 at p.35)

On September 10, 2009, Plaintiff was seen during sick call complaining of hernia pain. Plaintiff was referred to a physician. (#111-1 at p.41)

On September 30, 2009, Plaintiff was seen by Dr. Murray after he submitted a sick call request. (#111-1 at p.42) Plaintiff complained of a right inguinal hernia. Plaintiff again was given a hernia belt. (#111-1 at p.42)

On October 27, 2009, Plaintiff returned to sick call again due to complaints of a painful hernia. (#111-1 at p.43) Plaintiff was referred to a physician. (#111-1 at p.43)

On November 9, 2009, Plaintiff was seen by Defendant Moskovich. (#111-1 at p.44) Defendant Moskovich prescribed Plaintiff methacarbamol for his hernia. (#111-1 at p.44) Defendant Moskovich completed a consultation request for a hernia examination to determine whether surgery was necessary. (#111-1 at p.45)

On November 18, 2009, Plaintiff was seen at the Chronic Care Clinic for HCV treatment. (#111-1 at p.46)

On November 24, 2009, Plaintiff was examined by Dr. Almond. (#111-1 at pp.49-50) Dr. Almond noted that Plaintiff had a right inguinal hernia that was approximately the size of a baseball. (#111-1 at p.49) Dr. Almond recommended that Plaintiff be

referred to a surgeon for an evaluation "ASAP." (#111-1 at p.50) On December 9, 2009, Plaintiff was prescribed Darvon for pain by Dr. Almond. (#111-1 at p.52)

On December 17, 2009, Dr. Duensing evaluated Plaintiff's hernia. (#111-1 at p.51) Dr. Duensing recommended that Plaintiff undergo surgery if "acute indication arises." (#111-1 at p.51)

On December 22, 2009, Plaintiff was seen by Defendant Ifediora for the renewal of several medications including Darvon. (#111-1 at p.53) Defendant Ifediora refused to renew Plaintiff's Darvon prescription and noted "Darvon is not medically judicious for hernia pain." (#111-1 at p.53) Defendant Ifediora explained that "any hernia painful enough to require that warrants surgery and the surgeon Dr. Duensing just evaluate[d] [Plaintiff] recently and deemed surgery unnecessary at this time." (#111-1 at p.53)

On April 9, 2010, Plaintiff underwent additional lab testing which revealed minimal portal fibrosis. (#111-1 at pp.56 and 60) Dr. Warren recommended that Plaintiff's condition be monitored periodically. (#111-1 at p.60)

On May 18, 2010, Plaintiff was seen by Dr. Warren during sick call. (#111-1 at p. 62) Dr Warren noted that Plaintiff's hernia remained "unchanged from prior evaluations" and that there was no need for Darvon. (#111-1 at p.62)

Finally, Plaintiff was evaluated on August 26, 2010 in the Chronic Care Clinic for HCV treatment. (#111-1 at p.64)

Despite receiving the medical attention detailed above, Plaintiff complains that he has not been administered HAV or HBV vaccinations, nor has he had surgery to remove

his right inguinal hernia. Plaintiff states that he is in constant pain and that the hernia has now grown to the size of a baseball. Unfortunately for Plaintiff, he has failed to state a claim for deliberate indifference as a matter of law.

"Whether a prison's medical staff deliberately disregarded the needs of an inmate is a factually-intensive inquiry." *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1118 (8th Cir. 2007). "The plaintiff-inmate must clear a substantial evidentiary threshold to show that the prison's medical staff deliberately disregarded the inmate's needs by administering an inadequate treatment." *Id*. Negligent misdiagnosis does not create a cognizable claim under § 1983.

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 106, 97 S.Ct. 285. See also *Popoalii v. Corr. Med. Servs*., 512 F.3d 488, 499 (8th Cir. 2008) ("Medical malpractice alone ... is not actionable under the Eighth Amendment."). "Deliberate indifference entails a level of culpability equal to the criminal law definition of recklessness, that is, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004) (internal quotation omitted).

Here, although Plaintiff continues to complain of pain, based upon the undisputed evidence presented, the Court cannot conclude that the Medical Defendants acted with deliberate indifference. Plaintiff has been seen continually by the Medical Defendants for both Hepatitis C treatment and treatment of his hernia. Although Plaintiff may disagree with the treatment provided, this disagreement does not rise to a constitutional level. Under settled law, disagreement with treatment decisions does not rise to the level of a constitutional violation. *Popoalii v. Correctional Medical Servs.*, 512 F.3d 488, 499 (8th Cir. 2008)(quoting *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995)). Plaintiff has no constitutional right to receive a particular or requested course of treatment. *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). "[D]octors remain free to exercise their independent medical judgment" when treating inmates. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).

Further, while the Court appreciates the number of affidavits Plaintiff provides to support his claims, Plaintiff has failed to provide any medical evidence illustrating his need for different medical treatment. As a result, Plaintiff has failed to create a material question of disputed fact with regard to the Medical Defendants' conduct, and they are entitled to judgment as a matter of law.

## III. Conclusion:

The Court recommends that the motions for summary judgment (#106 and #109) be GRANTED. Plaintiff's claims against Defendants Byus, Kelley, and Norris should be

dismissed without prejudice. Plaintiff's claims against Defendants Austin, Green, Ifediora, Moskovich, Odom, and Ward should be dismissed with prejudice.

DATED this 19th day of October, 2010.

____________________________________

UNITED STATES MAGISTRATE JUDGE